[Civ. No. 5455. First Appellate District, Division One.—May 9, 1927.]

ANNA HANSEN, Appellant, v. MARIE N. HANSEN, Respondent.

ANNA HANSEN, Appellant, v. ALBERT M. HANSEN et al., Respondents.

[1] DEEDS — QUIETING TITLE — DELIVERY OF DEEDS FROM SON TO MOTHER—FINDINGS—EVIDENCE.—In these actions to quiet title to certain real property involving the question of the sufficiency of delivery of two deeds by plaintiff's husband to his mother, the evidence was sufficient to support the findings of a valid delivery of said deeds.

[2] Id.—Delivery of Instrument—Essential.—It is a general rule that it is essential to the validity of a deed that there should be a delivery of the instrument.

[3] Id.—Delivery—Intent.—Anything which clearly manifests the intention of the grantor that his deed shall presently become operative and effectual, that he loses control over it, and that the grantee is to become possessed of the estate, constitutes a sufficient delivery, and this rule rests upon the intention of the grantor, as manifested by the circumstances surrounding the transaction.

[4] Id.—Evidence—Intention to Deliver—Form of Delivery.—It is essential to the valid delivery that there must be some act or declaration from which an intention to deliver may be inferred; a formal delivery is not required, nor are express words necessary. Nor is a manual delivery of the instrument to the grantee required, it being sufficient if it is apparent either from the words or the acts of the grantor that it was his intention to treat the deed as his, and to make a delivery of the same.

[5] Id.—Title—Delivery—Intent.—The true test under which delivery is to be determined is in ascertaining whether in parting with the possession of the conveyance the grantor intended thereby to divest himself of title. If he did, there is an effective delivery; if not, there is no delivery; and the solution of this question is grounded entirely on the intention of the grantor to be determined by the trial court from a consideration of all the evidence in a given case bearing on the question.

[6] Id.—Fact.—Whether or not the requisite intent shall pass title is purely a question of fact for the trial court or jury.

[7] Id.—Constructive Delivery—Sufficiency of.—A deed may be good by constructive as well as by actual delivery, and the main thing which the law looks at is whether the grantor indicates his will that the instrument should pass into the possession of the grantee, and if that will is manifest then the conveyance inures as a valid grant, although the deed never comes into the hands of the grantee.

---

(1) 18 C. J., p. 438, n. 62.   (2) 18 C. J., p. 196, n. 17.   (3) 18 C. J., p. 197, n. 20.   (4) 18 C. J., p. 198, n. 25, 27, p. 199, n. 28, 29. (5) 18 C. J., p. 197, n. 21, p. 198, n. 23.   (6) 4 C. J., p. 647, n. 15; 18 C. J., p. 215, n. 5.   (7) 18 C. J., p. 199, n. 30.

2.  See 9 Cal. Jur. 148; 8 R. C. L. 973, 981.

3.  Delivery of deeds, notes, 16 Am. Dec. 35; 58 Am. Rep. 289; 53 Am. St. Rep. 537.

4.  See 9 Cal. Jur. 159; 8 R. C. L. 980.

5.  See 9 Cal. Jur. 153; 8 R. C. L. 978, 981, 982.

6.  Delivery of deed as question of law or fact, note, Ann. Cas. 1914D, 108. See, also, 9 Cal. Jur. 152.

7.  See 9 Cal. Jur. 160.

APPEAL from judgments of the Superior Court of the City and County of San Francisco. Walter Perry Johnson, Judge. Affirmed.

The facts are stated in the opinion of the court.

Harry I. Stafford and Wm. F. Stafford for Appellant.

Gillogley, Crofton & Payne for Respondents.

TYLER, P. J.—Action to quiet title to certain real property. Appellant Anna Hansen commenced independent actions affecting two distinct parcels of land, claiming that the deeds thereto made by one Charles J. Hansen to his mother, Marie N. Hansen, were void for want of sufficient delivery, and praying that plaintiff be adjudged to have an interest as an heir at law in the real property described therein. The actions were tried together and submitted on the same testimony. The trial court found in each case that the deeds had been delivered to the grantee named therein and that plaintiff had no interest in the property. [1] The sole question upon which a reversal is sought is that the evidence is insufficient to support the finding of delivery. It was stipulated between counsel that both appeals should be heard on one bill of exceptions and that the record in both cases might be printed in one transcript and both appeals considered thereon. It appears in evidence that one Charles J. Hansen intermarried with plaintiff in the year 1917. Prior thereto he had made his home with his mother and during this time he was the owner of the real property here involved. One of the parcels of land, described in the record as the "Church Street" property, was improved with four flats and the mother and son resided in one of them. The other parcel was situated on Carolina Street and it was improved with a small dwelling which deceased rented out to tenants. During his lifetime and prior to his marriage Hansen conveyed the Church Street property to his mother. This deed was dated June 24, 1911, and it was recorded on the eighth day of January, 1919. The Carolina Street property was also conveyed to her prior to his marriage. This deed was dated August 23, 1913, and it was recorded May 6, 1919. Hansen and his mother had a joint safe deposit box

in the Anglo-California Bank and the deed to the Church Street property was kept therein. The deed to the Carolina Street property was kept in a safe at the home of the parties. It may be stated in passing that no claim is here made that any title passed to respondent by reason of either of these conveyances. On July 2, 1919, about a year and a half after his marriage, Hansen was taken seriously ill and shortly thereafter his condition became such that he believed he was about to die. He sent for his mother on January 4th and instructed her to go to their joint box and bring to him its contents. The mother did as directed. She placed the contents in a small satchel and returned with the same to her son. The satchel contained the deed to the Church Street property, Liberty bonds, shares of stock, and insurance policies. She was told by Hansen to return in a couple of hours. This she did, whereupon Hansen handed her the satchel into which he had replaced the deed to the Church Street lot and the other property, saying, "Mama, I give you the deeds to all my income property. The Carolina property is back to me again and the same man that collects from the other will collect for that too. I want you go to the safe deposit box and get a box in your name and take all the papers from the box we have got and put them in your box, except my will and the papers from the shop. You shall leave them there as they are to be probated." About this time Hansen had executed his will, and this, together with certain bonds and other property he desired his mother, wife, brothers, and nephew to receive, he had replaced in the satchel in separate envelopes with the name of each person written on a piece of paper and pinned to each envelope. These documents were deposited by the mother in the joint safe deposit box. By the terms of the will his brother Albert M. Hansen was appointed without bonds to act as trustee of the estate. To his wife Anna he gave one-half of a described estate, the other half to his mother, Mrs. N. M. Hansen, his brothers Louis F. and Albert M. Hansen, and his nephew W. J. Davenport, share and share alike. The will provided that an automobile owned by him should go to his wife and mother jointly and the furnishings of the home to his wife, the wish being expressed in the will that she be permitted to remain in their

home rent free as long as she desired and until such time as she might remarry. On the same day Albert M. Hansen visited his sick brother and during a conversation had between them Charles informed Albert that he was going to die; that he had made his will and there would be nothing to probate except the stock in the business and the automobile, as he had fixed up his real estate; that he knew a delivery was necessary in order to pass title to his real property, and to accomplish this result he had required their mother to get a new box and to place therein the papers he gave her, and to keep in their joint box the will and stock certificates only; that while the deed to the Carolina Street property was not there, that their mother had it in her safe at home and it was all right. It appeared in evidence that Charles Hansen had studied law for about two years and knew that delivery of a deed was necessary to pass title to real property. On January 6, 1919, the mother again visited her son and while there plaintiff, who evidently had become aware of her husband's disposition of his property, complained to the defendant Marie Hansen that the latter had received more from her son than he had given to her. She complained of the fact that Charles had given to his mother all of his real estate and a two thousand dollar life insurance policy. Defendant knew nothing about this policy. She spoke to her son concerning the same and informed him of what his wife had told her. He responded that he had given his wife three thousand dollars in cash, one-half interest in his business, and certain government bonds. The mother requested that she be permitted to give the wife the life insurance, as she feared trouble. The son responded, "You had better give her the flat," but the mother objected to this plan. The life insurance was, however, transferred to plaintiff after the death of Hansen. On January 7th the mother again visited her son, who was then unconscious. She was of the opinion he was about to die and in conformity with his wishes she proceeded to the bank and procured a box in her own name and transferred to it all of the papers with which she had been entrusted, except the will and the stock representing her son's share in his business, which she left in their joint box. That evening Charles Hansen died and on the following day the mother took the deed to the Church Street property from the box and re-

corded it. On January 10th, following the funeral, the mother called the members of the family together for the purpose of delivering to them the contents of the satchel. It was found to contain a deed to Marie N. Hansen of the Church Street property, together with a bond for two hundred dollars; a deed to Louis Hansen of a lot in Berkeley and a bond worth two hundred dollars; bonds of the value of two hundred dollars to Albert Hansen and a sealed package for Anna Hansen, the contents of which was not disclosed. Respondent, on May 10th, recorded the deed to the Carolina Street property, which she subsequently conveyed to her son Albert M. Hansen, a party to the action. Probate proceedings were had in the estate and none of the property included in the papers delivered by the deceased to his mother was inventoried in the estate, nor was the real property. Plaintiff accepted distribution as provided in the will without objection and she retained the proceeds of the two thousand dollar life insurance policy which the deceased had given to his mother and which she had transferred to plaintiff after her son's death. Four years thereafter these actions were instituted. Under all these facts the trial court found that the deceased had delivered the deeds to the property in question with intent to divest himself of all title thereto, and vest the same in his mother. We are of the opinion that the findings are fully supported by the evidence. [2] It is a general rule that it is essential to the validity of a deed that there should be a delivery of the instrument. [3] Anything, however, which clearly manifests the intention of the grantor that his deed shall presently become operative and effectual, that he loses control over it, and that the grantee is to become possessed of the estate, constitutes a sufficient delivery. It is obvious that this rule rests upon the intention of the grantor, as manifested by the circumstances surrounding the transaction. The question of whether or not there has been a delivery must therefore be determined upon the facts of each particular case. [4] It is essential to a valid delivery that there must be some act or declaration from which an intention to deliver may be inferred. A formal delivery is not required, nor are express words necessary. Nor is a manual delivery of the instrument to the grantee required, it being sufficient if it is apparent either from the words or the acts

of the grantor that it was his intention to treat the deed as his, and to make a delivery of the same (18 Cor. Jur., p. 198). [5] The true test under which delivery is to be determined is in ascertaining whether in parting with the possession of the conveyance the grantor intended thereby to divest himself of title. If he did, there is an effective delivery. If not, there is no delivery. The solution of this question is grounded entirely on the intention of the grantor to be determined by the trial court from a consideration of all the evidence in a given case bearing on the question (*Williams* v. *Kidd,* 170 Cal. 631 [Ann. Cas. 1916E, 703, 151 Pac. 1]). Nor is any set form of delivery necessary, it being sufficient if from any or all of the circumstances the grantor has made known his intention irrevocably to part with his dominion and control over the instrument to the end that it may presently vest title in another. (*McCully* v. *McArthur,* 187 Cal. 194 [201 Pac. 323]; *Wilcox* v. *Hardisty,* 60 Cal. App. 206 [212 Pac. 633]; *McCarthy* v. *Security Trust etc. Bank,* 188 Cal. 229 [204 Pac. 818].) [6] Whether or not the requisite intent shall pass title is purely a question of fact for the trial court or jury. (*Heffner* v. *Sealey,* 175 Cal. 18 [164 Pac. 898].) Here it clearly appears that it was the intention of the grantor that his mother should have all his real property which produced an income which included the parcels in question, and all the facts and circumstances as above recited show beyond question that a complete delivery was made which effectuated such intention. Counsel for appellant specially urges his contention of the insufficiency of the evidence to support the finding of delivery as to the Carolina Street property, and our attention is particularly drawn to the evidence to the effect that the deed to this property was not in the satchel when it was delivered to the mother. Actual manual tradition or change of possession of the deed, however, was not necessary. As above indicated, delivery is a question of intent and to complete it no precise form of words and no particular character of act is necessary. [7] A deed may be good by constructive as well as by actual delivery. The main thing which the law looks at is whether the grantor indicates his will that the instrument should pass into the possession of the grantee, and if that will is manifest, then the conveyance inures as a valid grant, although the deed

never comes into the hands of the grantee (*Moore* v. *Trott,* 162 Cal. 268 [122 Pac. 462]; *Black* v. *Sharkey,* 104 Cal. 279 [37 Pac. 939]; 9 Cal. Jur., p. 160). And this general principle is enunciated by our code (Civ. Code, sec. 1059). Here the grantor had executed and acknowledged a conveyance of the property to his mother and it was in her possession, a fact with which he was familiar, as evidenced by his statements to his mother and brother. It is clearly apparent from the words and acts of the grantor that it was his intention to treat the deed as his act and to make a delivery of the same (18 Cor. Jur. 199).

We conclude that the evidence fully supports the findings and the judgments should therefore be and they are hereby affirmed.

Knight, J., and Cashin, J., concurred.